IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>v.<br><br><br>EDGAR OROZCO,<br><br>            Defendant. | **ORDER AND MEMORANDUM DECISION DENYING MOTION FOR COMPASSIONATE RELEASE**<br><br>Case No. 2:18-cr-515-TC<br><br>Judge Tena Campbell |

Before the court is Defendant Edgar Orozco's Motion for Compassionate Release (ECF No. 55). As originally filed, Mr. Orozco moved for a reduction of his sentence under 18 U.S.C. § 3582(c)(2) and Amendment 821 to the United States Sentencing Guidelines; or, in the alternative, for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). But the court found that Mr. Orozco was ineligible for a reduction under Amendment 821 because his sentence of 87 months was already at the low end of the amended guideline range and, under the Sentencing Guidelines, "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range …." USSG § 1B1.10(b)(2)(A). (See Order dated Dec. 21, 2023, ECF No. 57 at 1.)

Nevertheless, the court found that Mr. Orozco presented potentially meritorious arguments and ordered additional briefing to determine if Mr. Orozco met the requirements for compassionate release. (See ECF No. 57 at 1–2.) Mr. Orozco's defense counsel provided

1

supplemental briefing to his client's motion (see Def.'s Suppl. Mem., ECF No. 62) and the United States provided a response stating its reasons why it opposed the motion (see Pl.'s Resp., ECF No. 63).

Having carefully considered that briefing, the court agrees with the United States that Mr. Orozco's motion should be denied.

## BACKGROUND

Mr. Orozco pled guilty to one count of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Although that charge carries a mandatory minimum sentence of 10 years, see 21 U.S.C. § 841(b)(1)(A), Mr. Orozco met the safety valve criteria set forth in 18 U.S.C. § 3553(f), in part due to his lack of previous criminal history. As a result, the court imposed a sentence "in accordance with the applicable guidelines without regard to any statutory minimum sentence …." USSG § 5C1.2(a).

Due to the large quantity of methamphetamine that he possessed, Mr. Orozco's base level offense under USSG § 2D1.1 was 36. (See PSR ¶ 21, ECF No. 48.) This base offense level was reduced by five levels for a total offense level of 31 to account for Mr. Orozco's acceptance of responsibility and because he met the safety valve criteria. See USSG §§ 2D1.1(b)(18); 3E1.1(a)–(b); (PSR ¶ 30). If Amendment 821 had been in effect at the time of his sentencing, Mr. Orozco would have qualified for a further two-level reduction under USSG § 4C1.1, resulting in a total offense level of 29.

Because Mr. Orozco has no other criminal history, his Criminal History Category was I. (PSR ¶ 36.) Accordingly, with a total offense level of 31, his guideline range was 108 to 135 months. Had the court instead calculated his guidelines with a total offense level of 29, Mr. Orozco's guideline range would have been 87 to 108 months.

The parties reached a plea agreement under Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure.  (<u>Id.</u> ¶ 4.)  Under that agreement, the United States agreed to dismiss a separate count in the indictment and to recommend the low end of the guideline range.  (<u>Id.</u> ¶¶ 4, 58.)  The court sentenced Mr. Orozco to 87 months.  (<u>See</u> Judgment, ECF No. 52.)  Since his incarceration, he has had no disciplinary infractions in prison.  (FSA Eligibility Report ¶ 17, ECF No. 67.)  According to the Bureau of Prisons (BOP), his expected release date is January 3, 2025.

## LEGAL STANDARDS

Mr. Orozco brings his motion under 18 U.S.C. § 3582(c)(1)(A), which was modified by the First Step Act of 2018 (FSA).  <u>See</u> Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).  According to the statute, the court "may reduce the term of imprisonment … after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that … extraordinary and compelling reasons warrant such reduction … and that such a reduction is consistent with applicable policy statements by the [United States] Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The factors under 18 U.S.C. § 3553(a) include the nature of the crime, the defendant's characteristics and history, the danger to the public, and the sentencing range.

Before Congress passed the First Step Act, only the BOP could bring a compassionate release motion under § 3582(c)(1) requesting that the court reduce a prisoner's sentence.  Now the court may consider the issue either upon a motion from the BOP or "upon motion of the defendant …."  18 U.S.C. § 3582(c)(1)(A).  The court may only consider a defendant's motion after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of

such a request by the warden of the defendant's facility, whichever is earlier ...." Id.

Once a defendant has satisfied the exhaustion requirement, the court applies a three-step test to determine whether to reduce the sentence and release the defendant. United States v. McGee, 992 F.3d 1035, 1042–43 (10th Cir. 2021). First, the court determines "whether extraordinary and compelling reasons warrant a sentence reduction." Id. at 1042 (cleaned up). Second, the court considers "whether such reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. (cleaned up). Finally, the court "consider[s] any applicable § 3553(a) factors and determine[s] whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." Id. (cleaned up). "'[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others.'" Id. at 1043 (quoting United States v. Elias, 984 F.3d 516, 519 (6th Cir. 2021)).

The statute does not define "extraordinary and compelling reasons" and courts must "determine for themselves" what constitutes such reasons. Id. at 1045. But Congress has also mandated that the Sentencing Commission, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples[.]" 28 U.S.C. § 994(t).

Relevant to Mr. Orozco's motion, that guidance in its current form includes the following bases for a determination that extraordinary and compelling reasons exist: 1) the medical circumstances of the defendant; and 2) "Other Reasons." USSG § 1B1.13(b).

The "medical circumstances" category applies where the defendant is "suffering from a

serious physical or medical condition" or "suffering from a serious functional or cognitive impairment" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Id. § 1B1.13(b)(1)(B).  Extraordinary and compelling reasons also exist where "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."  Id. § 1B1.13(b)(1)(C).  Finally, extraordinary and compelling reasons exists where 1) "the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;" 2) "due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency …;" and 3) "such risk cannot be adequately mitigated in a timely manner."  Id. § 1B1.13(b)(1)(D).

The "Other Reasons" provision[1] reads: "The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."  USSG § 1B1.13(b)(5).

---

[1] The existence of a catch-all provision with only general criteria to guide its application means that, regardless of whether the court follows the language of the policy statement or simply looks to the statute, the analysis of the "extraordinary and compelling reasons" prong is essentially the same as the analysis of whether a reduction is consistent with any applicable policy statements. See McGee, 992 F.3d at 1045 (holding that courts have "the authority to determine for themselves what constitutes 'extraordinary and compelling reasons,'" but also noting that "this authority is effectively circumscribed by the second part of the statutory test, i.e., the requirement that a district court find that a reduction is consistent with applicable policy statements").

## ANALYSIS

### I.  Exhaustion of Administrative Remedies

The parties do not dispute that Mr. Orozco has exhausted his administrative remedies and Mr. Orozco has submitted a copy of the complaint he filed while incarcerated at FCI Petersburg. (See Compl., Ex. B to Def.'s Mot., ECF No. 55-2.)  That complaint was dated October 19, 2023,[2] and Mr. Orozco filed his motion for compassionate release over 30 days later, on November 20, 2023.  Accordingly, the court may consider Mr. Orozco's motion.

### II.  Extraordinary and Compelling Reasons

Mr. Orozco presents five circumstances that he argues rise to the level of extraordinary and compelling reasons justifying his immediate release from incarceration.  The court considers each in turn.

#### A.  Unequal Treatment

Mr. Orozco asserts that, because he is not a citizen of the United States, he is ineligible for a number of programs that allow for early release, such as the Residential Drug Abuse Program (RDAP).  While true that Mr. Orozco is ineligible for several early release programs and credits, another judge from this court has previously considered a similar argument from a non-citizen defendant and found that this discrepancy does not justify a reduction in sentence. See Asencion v. United States, No. 2:07-cv-203, 2007 WL 1139412, at *1 (D. Utah Apr. 17, 2007).  Moreover, the Tenth Circuit has held that "denying deportable aliens the

---

[2] After receiving Mr. Orozco's complaint, the prison asked him to file a separate application for compassionate release.  (See Compl., Ex. B to Def.'s Mot., ECF No. 55-2 at 2.)  Although Mr. Orozco did not file that application until November 1, 2023 (see id. at 6), which was less than 30 days before his filing in this court, the court finds that Mr. Orozco nevertheless exhausted his administrative remedies because he clearly requested compassionate release in his October complaint.  (See id. at 2.)

opportunity to participate in certain pre-release programs does not violate equal protection" principles, because there is a "rational basis to deem deportable aliens, who will be sent out of the country after the term of their sentence, ineligible for programs geared toward rehabilitating prisoners who will re-enter society after their release from confinement." United States v. Tamayo, 162 F. App'x 813, 816 (10th Cir. 2006).

The court has also considered whether Mr. Orozco is eligible to earn time credits under the First Step Act.  See 18 U.S.C. § 3624(b)(1).  But the Act specifically excludes prisoners who are "the subject of a final order of removal under any provision of the immigration laws[.]" 18 U.S.C. § 3632(d)(4)(E)(i).  As Mr. Orozco himself points out (see ECF No. 55 at 4), he is subject to a final order of deportation and therefore ineligible.  While the Tenth Circuit has not yet ruled on a challenge to the First Step Act on the grounds that this discrepancy violates the equal protection rights of non-citizens, its previous ruling in Tamayo suggests that it would not find such a challenge meritorious.  In any event, a challenge to the Bureau of Prison's computation of an inmate's sentence is more appropriately filed as a habeas petition under 28 U.S.C. § 2241, and this court does not have jurisdiction to hear such a petition because Mr. Orozco is not incarcerated in Utah.  See Rumsfeld v. Padilla, 542 U.S. 426 (2004) (holding that a § 2241 petition must be brought in the district of incarceration).

**B.  Rehabilitation**

Mr. Orozco offers evidence of his efforts to rehabilitate.  He has received no disciplinary infractions in prison and has been assessed to have a low risk of recidivism.  (See Ex. C. to Def.'s Mot., ECF No. 55-3.)  But while Mr. Orozco's disciplinary record is commendable, Congress has specifically instructed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for early release.  28 U.S.C. § 994(t).  His

exemplary prison record is therefore insufficient to establish extraordinary and compelling

reasons justifying an early release.

### C.  Unusual Punishment

Mr. Orozco asserts that he suffered numerous hardships due to the COVID-19 pandemic,

which necessitated harsh restrictions and imposed punishment in excess of what he would have

experienced at other times.  But while the Sentencing Guidelines do allow courts to consider

whether a pandemic or public health emergency could rise to extraordinary and compelling

reasons in some circumstances, the court finds that Mr. Orozco has not demonstrated those

circumstances here.

Under the Sentencing Guidelines, the existence of the pandemic is not by itself an

extraordinary and compelling reason for release.  See United States v. Medina, No. 2:15-cr-352-

TC, 2021 WL 1986834, at *2 (D. Utah May 18, 2021).  Instead, a defendant must show that "due

to personal health risk factors and custodial status, the defendant is at increased risk of suffering

severe medical complications or death as a result of exposure to the ongoing outbreak of

infectious disease or the ongoing public health emergency" and that "such risk cannot be

adequately mitigated in a timely manner."  USSG § 1B1.13(b)(1)(D)(ii)–(iii).  But Mr. Orozco

has not cited any medical conditions that render him especially vulnerable to medical

complications from the COVID-19 virus.

Although regrettable, the court finds that Mr. Orozco's situation was not unique.  Like

virtually everyone incarcerated during the Covid-19 pandemic, he experienced lockdowns,

quarantines, and restrictions on his programming and recreation.  But because Mr. Orozco has

not alleged any medical conditions that put him especially at risk, the court finds that the

circumstances related to the COVID-19 pandemic do not rise to the level of extraordinary and compelling reasons for release.

### D.  Release Plan

Although Mr. Orozco presents the court with a plan to work at a roofing company and live with his aunt if he is released, the court finds nothing extraordinary and compelling about providing a detailed release plan.[3]  Indeed, "[e]very inmate moving for compassionate release is expected to provide a release plan[.]"  <u>United States v. Edwards</u>, No. CR 03-234, 2022 WL 2866703, at \*6 (D.D.C. July 21, 2022) (citing 28 C.F.R. § 571.61(a)(2)).  Accordingly, the court is not persuaded by this argument.

### E.  Sentencing Disparity

Finally, Mr. Orozco argues that if he had been sentenced after the passage of Amendment 821, he would have been entitled to an additional two-level downward adjustment to his total offense level because he is a zero-point offender and meets the criteria set forth in USSG § 4C1.1.  Because the court sentenced Mr. Orozco to a term of imprisonment that was below the guideline range in place at the time of sentencing (108 to 135 months), he argues that a further reduction is now appropriate to reflect a below-guideline sentence under the amended guideline range (87 to 108 months).  But, as the court found in its previous order, Mr. Orozco is not eligible for a sentence reduction under Amendment 821 because the court "shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range …."  USSG § 1B1.10(b)(2)(A); <u>see also</u> 18 U.S.C. § 3582(c)(2) (requiring any reduction under that section to

---

[3] In any event, Mr. Orozco's plan is likely unrealistic, as he is subject to a final order of deportation.

be "consistent with applicable policy statements issued by the Sentencing Commission").  The court finds no extraordinary and compelling reason to reduce Mr. Orozco's sentence for this reason alone where he is otherwise statutorily ineligible for early release.

The court also notes that it is not clear that Mr. Orozco would have received a lower sentence had the court sentenced him today.  At the time of his sentencing, the court made a downward variance from Mr. Orozco's guideline range in part because it found that the guideline range did not adequately reflect Mr. Orozco's lack of prior criminal activity.  The two-level decrease under Amendment 821 gives zero-point offenders that recognition.  The court would not necessarily have made a further downward variance if it determined that the guideline range already reflected Mr. Orozco's clean record.  While Mr. Orozco presents many additional sympathetic circumstances—consistent employment despite a difficult childhood, financial troubles after his wife needed an expensive surgery, and a child with Down syndrome who requires special care—the court must balance those circumstances against Mr. Orozco's crime, which involved the possession of a substantial quantity of drugs.  Even if Mr. Orozco's guideline range had been 87 to 108 months at the time of sentencing, the sentence of 87 months that Mr. Orozco received is in line with the agreement reached with the United States and with the court's assessment of all the factors it must consider.

### III.  Section 3553(a) Factors

Because the court finds no extraordinary and compelling reasons justifying an early release, it need not consider whether a reduced sentence would comport with the factors enumerated in 18 U.S.C. § 3553(a).

Although the court sympathizes with Mr. Orozco's circumstances and has closely considered all possible avenues for relief, "[c]ases in which [a defendant's individual]

circumstances warrant a finding of 'extraordinary and compelling reasons' should be relatively rare." <u>United States v. Maumau</u>, 993 F.3d 821, 838 (10th Cir. 2021) (Tymkovich, J., concurring).  Mr. Orozco does not fall within that rare exception.

## ORDER

Mr. Orozco has failed to demonstrate extraordinary and compelling reasons that would justify immediate release or a reduction in his sentence.  Accordingly, his motion for compassionate release (ECF No. 55) is DENIED.

DATED this 4th day of September, 2024.

BY THE COURT:

Tena Campbell
United States District Judge